United States Court of Appeals,

Eleventh Circuit.

No. 94-8597.

Charlie FINCH, Petitioner-Appellant,

v.

James H. VAUGHN, Warden, Respondent-Appellee.

Oct. 31, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-cv-1023-RHH), Robert H. Hall, Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this habeas corpus case, we determine whether a guilty plea was knowing, intelligent and voluntary and resulted from ineffective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments, when the petitioner pled guilty to state narcotics charges with the understanding that his state sentence would be concurrent with his federal sentence. The district court denied habeas relief. We REVERSE and REMAND.

## I. BACKGROUND

In September, 1988, petitioner, Charlie Finch, who was on parole for a federal sentence with approximately ten years remaining, was arrested on state cocaine charges in DeKalb County, Georgia. Thereafter, federal authorities filed a detainer against him for violating his parole. Finch hired Harvey Monroe as his defense counsel.

After selecting a jury, Monroe and the state district attorney

engaged in plea negotiations.[1]  These negotiations culminated in Monroe's pleading guilty in return for a ten-year prison term to run concurrently with his previous federal sentence.  Accordingly, a DeKalb County Superior Court judge sentenced Finch to a ten-year term of imprisonment "concurrent with any sentence that you are presently under, probation or parole."  R1-1D-8.  At Monroe's instigation, Finch specifically questioned the state trial judge concerning the meaning of "concurrent":

> MR. MONROE:  I think Mr. Finch wants to ask a question.
>
> MR. FINCH:  *Something I didn't quite understand* in this case, Your Honor.  *Concurrent.*
>
> THE COURT:  *The same time.*  I will not make this consecutive to anything.  *You serve this at the time that you are serving any other sentence.*  If you get your parole revoked, this will be served at the same time.
>
> MR. FINCH:  *That means that will be concurrent with the federal?*
>
> THE COURT:  *Yes, sir.*
>
> MR. FINCH:  Okay.

*Id.* at 9 (emphasis added).

Although Finch was taken into federal custody briefly following his plea, federal authorities returned him to state custody that same day.  Finch was sent to state prison to serve his state sentence.  His remaining federal sentence has been suspended until his release from state custody, at which time his federal parole will be revoked, and he will serve his federal sentence. Thus, the parole violation had the effect of tolling Finch's

---

[1]While Finch and his counsel anticipated going to trial, the location of a critical prosecution witness was the impetus for a plea bargain.

federal parole and deferring service of the entire remaining sentence until after he completes his state term.

Following informal efforts to effectuate the state court's concurrency stipulation as to his state and federal sentences,[2] Finch sought a state writ of habeas corpus on the grounds that his guilty plea based on a concurrent state and federal imprisonment term was involuntary, unintelligent, and ill-counseled. An evidentiary hearing was conducted in Baldwin County Superior Court. Finch testified as to his understanding of his sentence as a result of the plea bargain in response to questions by his present appellate attorney:

> Q. Mr. Finch, when you pleaded guilty in DeKalb County in front of Judge Castellani, what was the plea bargain?
>
> A. *The plea bargain was that I pleaded guilty to ten years to run concurrent with any previous sentence.*
>
> Q. Did anyone tell you that the Superior Court might not have the power to enforce that sentence or effectuate that sentence?
>
> A. *No. I was under the impression that concurrent sentence,* that's what it *meant,* you know, *that the sentence would run concurrent with the other.*
>
> Q. What did you anticipate would happen with your federal sentence?
>
> A. Well, *I thought that once I got the sentence saying it would run concurrent, then I would be released to the feds.*
>
> Q. Did that happen?
>
> A. No, it didn't.

---

[2]Monroe made several futile inquiries on Finch's behalf to get federal authorities to revoke his probation. Subsequently, present appellate counsel unsuccessfully sought state parole to the federal detainer, and a reconstructed sentence in the trial court that might have compelled Finch's transfer to federal custody.

....

Q. Why did you believe your federal parole would be revoked? Where did you get that idea that it would be promptly revoked?

A. *I was under the impression that when I got a concurrent sentence then I would be released to the federal due to the fact that they had already lodged a detainer on me.*

....

Q. [D]id anyone tell you in connection with your DeKalb County plea or in any other connection, that the power to order concurrency did not belong to Judge Castellani or to the State or the D.A.?

A. *No, no one told me that.*

Q. *You thought that if the judge designated or stipulated that the sentences would be concurrent, they would be concurrent.* Right? You had no reason to believe otherwise?

A. *That's what I thought.*

R1-1H-11-12, 13 (emphasis added).

Monroe also testified at the evidentiary hearing in the state habeas court concerning his understanding of the concurrent sentence and the advice that he had given Finch in response to questions from the court, the state assistant attorney general, and Finch's present counsel:

A. In an effort *to help Mr. Finch*—or I thought it was to help—*Judge Castellani made his sentence run concurrent* [with] anything, *any sentence he was serving.* And I think his words were whether it be parole or probation. *But the problem, of course, we all—I think we all were aware of was we didn't know whether the federal people would take custody of Mr. Finch and let him start serving that federal time so that the concurrent part of Judge Castellani's sentence would have any meaning to it.* We hoped they would, but subsequently, they did not. They merely placed a detainer with the intention of letting Mr. Finch sit there until his State time runs out and then taking him back into federal custody.

THE COURT: Was that a calculated risk y'all ran as a defense?

WITNESS: We were well aware of it, yes.

THE COURT: Okay. *Was Mr. Finch aware of it?*

WITNESS:  *I certainly—certainly hope so.   I thought he was aware of it.*

....

Q. Was he aware that the detainer could be lodged against him and that the sentence would be tolled until the State Court time was served, so in effect the federal time would be consecutive to what he was currently serving?

A. *We didn't use that terminology, it would be tolled.*   He knew that he owed the federal government ten years or some part of it.

....

Q. So, but now his parole isn't revoked now?

A. Right.   It isn't revoked now.

....

Q. *When it is, is that sentence going to be concurrent?*

A. Well, the fact—*the effect of it, naturally it will not be.*

....

Q. *There's nothing in the transcript to suggest that anybody indicated at least on the transcript to Mr. Finch that the court didn't have the power to deliver the concurrent sentence, which was the basis of the bargain he was making?*

A. The question on page 8 [of the plea proceedings], the statement by the court, line 18:   *"Mr. Finch, the court will sentence you as to count two to ten years to serve.   I will make that concurrent with any sentence that you are presently under, probation or parole."*

Q. *But Judge Castellani nowhere in there said, the D.A. nowhere says and you no where [sic] says—say—I'm sorry—*

A. *None of us said—*

Q. *—that there was a big if connected to this.*

A. *It's not clear in the transcript, no.*

....

Q. Well, *do you remember ever specifically telling him that, look, Charlie, it doesn't make any difference what Judge Castellani provides here, you know, we're going to get up here and talk about concurrency and it's not going to make any*

*difference. The D.A. is going to recommend concurrency and it probably won't make any difference.* Do you ever recall anything like that?

A. *No.* What I said is we will do everything we can to get the federal people to try to take you into custody so that this sentence will be concurrent. That was the way we—

Q. But you never addressed it, telling him, you're sitting down here, *we'll [sic] dealing at a table where there's a very important party not represented and not committed.* You see what I'm—*you didn't tell him that whether that sentence is concurrent or not is up to somebody that's not even here in the courtroom? Not even in DeKalb County?*

A. *No.* As I recall—as I recall, I told him that we couldn't—*there was no guarantee that we could make the Federal Parole Commission do anything. That's a risk. A real risk.* And in that case, *I don't recall discussing in terms of if that happens, then your sentence won't really be concurrent. I don't remember saying anything like that.*

........

Q. Did you have any anticipation that things would happen the way they did? Did you realistically expect that?

A. Well, we were—we had the theory, yeah, that the federal people might not do what we thought they should do.

Q. But it wasn't substantial enough to make preliminary inquiry? Correct?

A. (No response)

Q. I mean the fear.

A. We had a jury sitting there waiting on us.

Q. I know you probably had compulsions in other directions. But *I mean just as to the plea,* not for the fire burning across the courtroom.

A. *We really didn't. We didn't do anything to check with federal people prior to entering the plea.*

Q. *Are you aware that their policy in situations like this is to have it occur exactly as it occur[red]?*

A. *I wasn't then.*

*Id.* at 25-26, 27, 30, 31, 32-33, 45 (emphasis added).

Monroe testified that the plea negotiations were unanticipated

since he had come to court prepared to go to trial. Further, he conceded that he had no experience with a defendant who had violated state laws while on federal parole, that he was unaware of how federal authorities might assume custody or federal policy in such situations, and that he had no pre-plea contact with federal parole authorities. Specifically, Monroe testified that he did not advise Finch that his federal sentence could be tolled during his state sentence, and that the state plea bargain for sentence concurrency was meaningless because it depended on federal compliance, when the government was not a party to the bargain.

The state habeas court denied relief, and the Georgia Supreme Court declined to review the case. Finch then sought habeas relief in federal district court. The district court adopted the report and recommendation of a magistrate judge and denied Finch's petition. Both the state and federal habeas courts found Finch's plea to be constitutional because it was not induced by threat or coercion, and they concluded that he received appropriate advice from his attorney, because *Monroe* had some knowledge that there had to be federal compliance for the concurrent sentences to be effective. On appeal, Finch pursues his arguments that his plea, negotiated explicitly for a state prison term concurrent with the balance of his federal sentence, was not knowing, intelligent and voluntary, and that he received ineffective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments.

## II. DISCUSSION

Our review of the voluntariness of a guilty plea and ineffective assistance of counsel is plenary because "these issues

are mixed questions of fact and law ... subject to independent review on appeal." *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.; United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir.1986) (per curiam).

Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir.) (en banc), *cert. denied,* 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause. *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. *Santobello v. New York,* 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

For a guilty plea to be entered knowingly and intelligently, " "the defendant must have not only the mental competence to understand and appreciate the nature and *consequences* of his plea but he also must be reasonably informed of the nature of the

charges against him, the factual basis underlying those charges, and the *legal options and alternatives that are available.* ' " *Stano,* 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." *Boykin v. Alabama,* 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Stano,* 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." *Stano,* 921 F.2d at 1141 (citing *Boykin,* 395 U.S. at 243-44, 89 S.Ct. at 1712).

In exchange for pleading guilty on the morning of his trial, Finch understood that his state term of imprisonment would be concurrent with the balance of his federal sentence. This was his "inducement" for pleading guilty. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 498-99. Finch, a layman, was entitled to presume that the state was bargaining in good faith, *see Meagher v. Dugger,* 861 F.2d 1242, 1246 (11th Cir.1988) (per curiam), and that the concurrent sentence provision was meaningful and would be operative.

In addition to Monroe's counseling Finch regarding the concurrent service of his state and federal sentences, the transcript of the plea proceeding reveals that Finch sought further assurance from the state court that his understanding of the concurrent sentences was correct before pleading guilty. Thus, his understanding of the concurrent state and federal sentences that he would receive was reinforced by the state trial judge, who explained to Finch that "concurrent" meant that the sentences would

be served at the same time. Finch was entitled to believe that the state court's solemn pronouncement of a term of the plea agreement was definitive and, consequently, that the state would effectuate the terms of its plea bargain. *See United States v. Ford,* 99 U.S. 594, 606, 25 L.Ed. 399 (1878).

The advice concerning the concurrency of his state and federal sentences given to Finch by Monroe, the state in its plea bargain, and the state trial judge was worse than misleading, it was erroneous. Under the principle of dual sovereignty, a defendant may be prosecuted and sentenced by state and federal governments if his conduct violates the laws of each sovereign. *United States v. Wheeler,* 435 U.S. 313, 316-18, 98 S.Ct. 1079, 1082-83, 55 L.Ed.2d 303 (1978); *United States v. Ballard,* 6 F.3d 1502, 1507 (11th Cir.1993). We specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence. *United States v. Adair,* 826 F.2d 1040, 1041 (11th Cir.1987) (per curiam). A federal court is entitled to ignore a state court's imposition of such a sentence because adherence would encroach upon the federal court's sentencing authority "by, in effect, eliminating the federal sentence." *Ballard,* 6 F.3d at 1509. Additionally, a federal sentencing court is not bound by a state plea bargain unless the federal government directly or indirectly was involved in the state plea bargaining process. *Meagher v. Clark,* 943 F.2d 1277, 1282 (11th Cir.1991); *see Pinaud v. James,* 851 F.2d 27, 30 (2d Cir.1988) (when "federal officials are not

parties to the state plea bargain," the federal court is not obligated to comply with the terms of the plea agreement entered into by the defendant and the state).

Finch not only was unable instinctively to appreciate the allocation of state and federal prosecuting and sentencing authority and he was given no reason to question that the two governments would not cooperate, but also he was not informed that established federal policy permitted a federal parole violation warrant to suspend or toll his federal sentence so that it could be revoked and served in full after completion of his state term of imprisonment. *Moody v. Daggett,* 429 U.S. 78, 84, 97 S.Ct. 274, 277, 50 L.Ed.2d 236 (1976); *Goodman v. Keohane,* 663 F.2d 1044, 1046-47 (11th Cir.1981) (per curiam); *Cook v. United States Attorney General,* 488 F.2d 667, 670-71 (5th Cir.), *cert. denied,* 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974). Thus, it was virtually certain that Finch's state and federal sentences would be consecutive and not concurrent.

> " "[A] plea of guilty entered by one *fully aware of the direct consequences, including* the actual value of any *commitments* made to him *by the court, prosecutor,* or *his own counsel,* must stand *unless induced by* threats (or promises to discontinue improper harassment),*misrepresentation (including unfulfilled or unfulfillable promises),* or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' "

*Brady,* 397 U.S. at 755, 90 S.Ct. at 1472 (citations omitted) (emphasis added). Finch had a due process right to assume that the prosecutor would recommend and the court would issue an effective sentence. *See Correale v. United States,* 479 F.2d 944, 946-49 (1st Cir.1973).

Under this controlling law, it is clear that a federal

sentencing court could not be bound by the state plea bargain that Finch's state sentence would run concurrently with his prospective federal sentence for violating his parole. Not only were federal officials not parties to the plea bargain, but also effectuation of the plea bargain would negate a federal court's sentencing authority in contravention of dual sovereignty. Because this erroneous advice from his attorney, the state, and the state trial judge was the basis for Finch's guilty plea, his plea was unconstitutionally induced in violation of his due process rights. In analyzing inducement for his guilty plea, the state and federal habeas courts incorrectly focused on threats or coercion and failed to recognize the untenable sentencing information and plea bargain provision explained to Finch from legal authorities upon whom he was entitled to rely, his counsel and, especially, the state judge. Thus, we conclude that Finch's guilty plea was unconstitutional because it was not knowing, intelligent and voluntary.

Consequently, Monroe's plea negotiations and advice to Finch concerning pleading guilty constituted ineffective assistance of counsel. "A guilty plea is open to attack on the ground that counsel did not provide the defendant with "reasonably competent advice.' " *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); *see Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard

of reasonableness, based upon which he pled guilty). For a guilty plea to "represent an informed choice" so that it is constitutionally "knowing and voluntary," the "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." *Scott v. Wainwright,* 698 F.2d 427, 429 (11th Cir.1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis ... as such an omission cannot be said to fall within "the wide range of professionally competent assistance' demanded by the Sixth Amendment." *Hill,* 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)).

When negotiating the plea bargain on the morning of trial, Monroe was prepared for trial and not sentencing. He had neither researched the law concerning federal parole revocations nor inquired of federal authorities concerning government policy and procedure regarding defendants who commit state crimes while on federal parole. The transcript of the evidentiary hearing in the state habeas court evidences that Monroe had no experience with a defendant who had violated state laws while on federal parole. Significantly, he was unaware that Finch's federal sentence could be tolled during his state incarceration, and that his state plea bargain for state and federal sentence concurrency was *meaningless* because it depended on federal compliance when the government had not been a party to the plea bargain. Whatever risk *Monroe* may have understood was involved with the concurrent sentence provision of the plea bargain, the focus of the decisions denying habeas

relief by the state and federal habeas courts, he admittedly failed to communicate this concern or any disclaimer regarding federal compliance to Finch, who needed accurate sentencing advice to enter an informed guilty plea. Defense counsel has a constitutional duty to "know or learn about the relevant law and evaluate its application to his or her client.... [p]articularly when a plea bargain is discussed, and hence sentencing becomes the client's preeminent concern." *Correale,* 479 F.2d at 949. Because the record supports Finch's contention throughout his state and federal habeas proceedings that he was induced to plead guilty by his counsel's erroneous advice that the plea bargain would enable him to serve his federal and state sentences concurrently, we conclude that Monroe provided ineffective assistance of counsel by misinforming Finch concerning the essence of his decision to plead guilty on a basic principle of dual sovereignty and established federal policy.

## III. CONCLUSION

In this habeas case, Finch argues that his guilty plea was not knowing, intelligent and voluntary, and that his counsel's representation regarding the guilty plea was ineffective. The district court used the wrong legal standards in denying habeas relief. Accordingly, we REVERSE and REMAND with instructions to grant Finch's petition for habeas relief and to allow him to withdraw his plea and to proceed to trial.