Justice Stevens,
with whom Justice Soutee joins,
dissenting.
The most significant aspect of today’s decision is the Court’s unanimous rejection of the view that all postjudgment motions under Federal Rule of Civil Procedure 60(b) except those alleging fraud under Rule 60(b)(3) should be treated as second or successive habeas corpus petitions. Not only do I agree with that holding, I believe that we should have more promptly made clear that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and Rule 60(b) can coexist in harmony. See Abdur’Rahman v. Bell, 537 U. S. 88, 90 (2002) (Stevens, J., dissenting from dismissal of certiorari as improvidently granted).
As the Court recognizes, whether a Rule 60(b) motion may proceed in the habeas context depends on the nature of the relief the motion seeks. See ante, at 533.[1] Given the substance of petitioner’s motion, I agree with the Court that this was a “true” Rule 60(b) motion and that the District Court and the Court of Appeals therefore erred in treating it as a successive habeas petition. And while I also agree with much of the Court’s reasoning in Parts I and II of its opinion, I believe the Court goes too far in commenting on *540 issues that are not directly before us and that have not been fully briefed. See, e. g., ante, at 530-532 (discussing various Court of Appeals cases). My main disagreement, however, pertains to Part III of the Court’s opinion.
The Court reaches beyond the question on which we granted certiorari (whether petitioner’s Rule 60(b) motion should be treated as a successive habeas petition) and adjudicates the merits of that motion. In my judgment, however, “correct procedure requires that the merits of the Rule 60(b) motion be addressed in the first instance by the District Court.” Abdur’Rahman, 537 U. S., at 97 (Stevens, J., dissenting). A district court considering a Rule 60(b) motion will often take into account a variety of factors in addition to the specific ground given for reopening the judgment. These factors include the diligence of the movant, the probable merit of the movant’s underlying claims, the opposing party’s reliance interests in the finality of the judgment, and other equitable considerations. See 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2857 (2d ed. 1995 and Supp. 2004); see ibid, (noting that appellate courts will reverse a district court’s decision only for an abuse of discretion); Plant v. Spendthrift Farm, Inc., 514 U. S. 211, 233-234 (1995) (Rule 60(b) “reflects and confirms the courts’ own inherent and discretionary power, ‘firmly established in English practice long before the foundation of our Republic,’ to set aside a judgment whose enforcement would work inequity”). In light of the equitable, often fact-intensive nature of the Rule 60(b) inquiry, it is inappropriate for an appellate court to undertake it in the first instance. This is especially so in this case, in which both the briefing and the record before us are insufficient with regard to the merits issue.
Orderly procedure aside, the Court’s truncated analysis is unsatisfactory. At least in some circumstances, a supervening change in AEDPA procedural law can be the kind of “extraordinary circumstane[e],” Ackermann v. United States, *541 340 U. S. 193, 199 (1950), that constitutes a “reason justifying relief from the operation of the judgment” within the meaning of Rule 60(b)(6). In this case, the District Court dismissed petitioner’s habeas petition as time barred after concluding that his second motion for state postconviction relief did not toll AEDPA’s statute of limitations. See 28 U. S. C. § 2244(d). After that judgment became final, however, we decided Artuz v. Bennett, 531 U. S. 4 (2000), which made clear that the District Court’s ruling on tolling was erroneous and that the habeas petition should therefore not have been dismissed.[2]
Unfortunately, the Court underestimates the significance of the fact that petitioner was effectively shut out of federal court — without any adjudication of the merits of his claims— because of a procedural ruling that was later shown to be flatly mistaken. As we have stressed, “[dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.” Lonchar v. Thomas, 517 U. S. 314, 324 (1996); see also Slack v. McDaniel, 529 U. S. 473, 483 (2000) (“The writ of habeas corpus plays a vital role in protecting constitutional rights”). When a habeas petition has been dismissed on a clearly defective procedural ground, the State can hardly claim a legitimate interest in the finality of that judgment. Indeed, the State has experienced a windfall, while the state prisoner has been deprived — contrary to congressional intent — of his valuable right to one full round of federal habeas review.
While this type of supervening change in procedural law may not alone warrant the reopening of a habeas judgment, there may be special factors that allow a prisoner to satisfy *542 the high standard of Rule 60(b)(6). For instance, when a prisoner has shown reasonable diligence in seeking relief based on a change in procedural law, and when that prisoner can show that there is probable merit to his underlying claims, it would be well in keeping with a district court’s discretion under Rule 60(b)(6) for that court to reopen the habeas judgment and give the prisoner the one fair shot at habeas review that Congress intended that he have. After all, we have consistently recognized that Rule 60(b)(6) “provides courts with authority ‘adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.’” Liljeberg v. Health Services Acquisition Corp., 486 U. S. 847, 864 (1988) (quoting Klapprott v. United States, 335 U. S. 601, 614-615 (1949)). Here, petitioner, who is serving a 99-year term in Florida prison, filed his Rule 60(b) motion approximately eight months after this Court’s decision in Artuz. A district court could reasonably conclude that this period reveals no lack of diligence on the part of an incarcerated pro se litigant.[3] And while we have received scant briefing on the probable merit of his petition, his allegation — that his guilty plea was not knowing and voluntary because it was based on grossly inaccurate advice about the actual time he would serve in prison — at least states a colorable claim of a constitutional violation. See Finch v. Vaughn, 67 F. 3d 909 (CA11 1995); see also Mabry v. Johnson, 467 U. S. 504 (1984).[4]
The Court relies on petitioner’s supposed lack of diligence in pursuing review of the District Court’s initial statute-of- *543 limitations ruling. See ante, at 537. In fact, petitioner did appeal the District Court’s ruling, which the Court of Appeals correctly interpreted as a request for a certificate of appealability (COA).[5] As for petitioner’s failure to seek rehearing or certiorari, he alleged in his Rule 60(b) motion, App. 16, and again in his reply brief, that he filed a timely petition for rehearing on April 18,2000, but that the clerk of the Court of Appeals returned the motion unfiled, “explaining, erroneously, that his appeal was dismissed and closed on October 28, 1999.” Reply Brief for Petitioner 13 (emphasis deleted). According to petitioner, “[t]his official misinformation carried the weight of a court decision and was enough to convince a pro se litigant (and some lawyers) that the 90-day window for filing a certiorari petition expired, as well.” Ibid. The State, however, represents that petitioner erroneously filed the petition for rehearing under the case number of an earlier, dismissed appeal. Brief for Respondent 4. *544 I do not know how to resolve these allegations, but this only highlights the propriety of a remand. Even on the State’s version of events, petitioner’s attempt at filing for rehearing is proof of diligence on his part.
Putting these allegations aside, the Court’s reasoning is too parsimonious. While petitioner could have shown even greater diligence by seeking rehearing for a second time and then filing for certiorari, we have never held pro se prisoners to the standards of counseled litigants. See, e. g., Haines v. Kerner, 404 U. S. 519 (1972) (per curiam). Indeed, petitioner’s situation contrasts dramatically with that of the movant in the case the Court relies on, Ackermann v. United States, 340 U. S. 193 (1950). See ante, at 537-538. In upholding the denial of Rule 60(b)(6) relief in Ackermann, the Court put great emphasis on the fact that the movant had the benefit of paid counsel and that, for much of the relevant period, he was not detained, but rather enjoyed “freedom of movement and action,” 340 U. S., at 201.[6] In any event, I believe that our rules governing prisoner litigation should favor a policy of repose rather than a policy that encourages multiple filings with a low probability of success.[7]
*545 Accordingly, I agree with the Court’s conclusion that petitioner filed a “true” Rule 60(b) motion. I respectfully dissent, however, because of the Court’s decision to rule on the merits of the motion in the first instance.

 Under the First Circuit’s useful formulation, which was invoked by Judge Tjoflat’s dissenting opinion below, “[w]hen the motion’s factual predicate deals primarily with the constitutionality of the underlying state conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from one in which the motion’s factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying relief. That is the classic function of a Rule 60(b) motion, and such a motion should be treated within the usual confines of Rule 60(b).” Rodwell v. Pepe, 324 F. 3d 66, 70 (2003) (citation omitted); see also 366 F. 3d 1253, 1297 (CA112004) (Tjoflat, J., specially concurring in part and dissenting in part).

 Although the State contests this point in a footnote, see Brief for Respondent 40-41, n. 33, the Court rightly assumes that the District Court’s decision was incorrect. See ante, at 536, and n. 8. If any doubt remains, it should be resolved by the District Court in the first instance.

 While Rule 60(b)(6) contains no specific time limitation on filing, it is worth noting that petitioner filed his motion within the strict 1-year limitation that applies to motions under Rules 60(b)(lM3).

 It is also worth noting that Artuz v. Bennett, 531 U. S. 4 (2000), was decided only seven months after petitioner’s habeas judgment became final. In cases where significant time has elapsed between a habeas judgment and the relevant change in procedural law, it would be within a district court’s discretion to leave such a judgment in repose.

 See Fed. Rule App. Proc. 22(b)(2) (“If no express request for a certificate is filed, the notice of [appeal shall be deemed to constitute] a request addressed to the judges of the court of appeals”). The procedural route that petitioner navigated was actually more complicated. After the Magistrate Judge initially recommended dismissal of the petition as time barred, petitioner filed an objection that raised a Third Circuit case, Lovasz v. Vaughn, 134 F. 3d 146 (1998), which was among the circuit cases that were later endorsed by Artuz, 531 U. S., at 8. The Magistrate’s final report noted that the Eleventh Circuit had not addressed the relevant issue of tolling, and then proceeded to rely (oddly) on Lovasz to deny petitioner’s claim. In my view, the citation to Lovasz and the Magistrate’s acknowledgment that there was no Eleventh Circuit precedent on point provided a reasonable basis for the granting of a COA.
In fact, on September 23,1998, petitioner filed an application for a COA, and this application was granted by the District Court. The Court of Appeals, however, dismissed petitioner’s appeal on October 28, 1999, and remanded the COA for a determination of which specific issues merited permission to appeal. On remand, petitioner filed a new application for a COA, but this time the District Court denied the request. Petitioner then filed a timely appeal, and the District Court granted his motion to proceed in forma pauperis on appeal. The Court of Appeals then declined to issue a COA and dismissed the appeal on April 6,2000.

 Ackermann is further distinguishable in that it did not involve the sort of plain error of law that has been identified in this case. But even if Ackermann were not distinguishable, I would find the views expressed by Justices Black, Frankfurter, and Douglas in dissent, see 340 U. S., at 202 (opinion of Black, J.), more persuasive than those expressed by Justice Minton.

 A petition for certiorari seeking review of a denial of a COA has an objectively low chance of being granted. Such a decision is not thought to present a good vehicle for resolving legal issues, and error correction is a disfavored basis for granting review, particularly in noncapital cases. See generally this Court’s Rule 10. As for the fact that this Court granted certiorari in Artuz eight days after the Eleventh Circuit denied petitioner a COA, it would be unrealistic to fault petitioner for failing to capitalize on this fortuity. In my experience, even lower courts and counseled litigants are often not aware of our grants of certiorari on issues that may be relevant to their current business. It would be particularly inappropriate to impose such a strict expectation on a pro se prisoner, *545 particularly in the absence of any indication of when, given his circumstances in prison, he could have reasonably been expected to learn of our grant in Artuz.