# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————

m 99-50190

———————

JESSE MONTOYA,

Petitioner-Appellee,

VERSUS

GARY L. JOHNSON,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellant.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

September 14, 2000

Before JOLLY, SMITH, and BARKSDALE,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

When he pleaded guilty, for separate criminal acts, to federal charges of carjacking and state charges of aggravated robbery, Jesse Montoya no doubt would have preferred that his federal and state terms of imprisonment run concurrently. The state court did sentence him concurrently but, importantly, did so before the federal court had issued its sentence. There being no previous federal sentence with which Montoya's state sentence could run, it was left to the federal court to decide whether to allow his federal sentence to run concurrently with his previously-issued state sentence. Montoya's hopes were thus largely dashed when the federal court subsequently

sentenced him to a consecutive term of incarceration, for that meant that his state sentence would run concurrently *only* if he were prematurely discharged from state prison and subsequently detained for federal incarceration.

In retrospect, Montoya would have been better served had he been sentenced in federal court *before* he was sentenced by the state court. He claims constitutional error, seeking a federal writ of habeas corpus from his guilty plea on the state charges on the ground that that plea was premised on the state's promise of concurrent sentencing, failure of which rendered his plea unknowingly and involuntarily submitted. Alternatively, he complains of unconstitutionally ineffective counsel.

The state courts have rejected these arguments, concluding that Montoya was made adequately aware of the terms of his state plea agreement in open court, thereby rendering his plea voluntary and curing any ineffectiveness of counsel. Therefore, whatever we might have thought of Montoya's claims if we were ruling on them in the first instance, principles of federalism, comity, and finality of judgments, impressed upon us by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), counsel us to deny relief. Consequently, we REVERSE.

## I.

Before imposition of the state sentence, Montoya had pleaded guilty to carjacking charges in federal court. He had not been sentenced on the federal charge when he pleaded guilty to, and faced sentencing for, aggravated robbery in Texas state court.

## A.

Montoya's plea agreement with the state provided that his twelve-year state sentence would be imposed *concurrently with* his pending federal sentence.[1] That is, the state agreed to allow him to use any time spent serving a federal sentence as credit against his state sentence. Accordingly, Texas law authorizes a state court to sentence a defendant to a term of imprisonment to be served concurrently with another sentenceSSbut only if the other sentence has already been imposed.[2] When Montoya was sentenced on the state charge, however, *there was no pending federal sentence* with which the state sentence could run concurrently pursuant to the state plea agreement.

Clifford Hardwick, Montoya's attorney in the state prosecution, advised him to plead guilty in state court, even though federal sentencing had not yet taken place, rather than to seek a continuance and delay pleading and sentencing in state court until after federal sentencing, because the policy of the state judge was either to accept a plea or proceed

---

[1] The written plea agreement read: "I have agreed with the State to the terms and conditions of the plea agreement as follows: 1. I will enter a plea of guilty to the offense of Aggravated Robbery, charged against me in this cause. . . . 3. Defendant's punishment will be set as follows: Twelve (12) Years IDTDCJ, concurrent with Federal sentence."

[2] *See* TEX. CODE CRIM. P. art. 42:08(a) (stating that "in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly").

2

immediately to trial. An earlier opportunity for federal sentencing had been delayed because Montoya's federal counsel was out of town.

At the plea hearing in state court, the following exchange took place:

THE COURT: I just want to make sure that there wasn't something else that they offered you and changed it. Okay. And . . . does that include all aspects of the recommendation, Mr. Hardwick?

MR. HARDWICK: Well, also, Your Honor, the State had agreed that that sentence . . . run concurrent with his federal offense, which is to be sentencedSShe is to be sentenced on August 31st for the federal offense and he already pled guilty to that.

THE COURT: All right. I am going to write that in on item three here. Concurrent with the federal sentence. *Now, you understand, Mr. Montoya, I can't bind the federal judge to do anything. But what I am saying is that our time*SS*you will be given credit on this sentence with the time you serve in federal court. Now, what they do, I am not sure. I don't know about how they*SS*what their rules are.*

THE DEFENDANT: *I understand.*

THE COURT: But our rule will be that you will get credit on this one. . . . I will announce for the record that I will not exceed the agreed recommendation as to punishment. . . . [T]welve years to be served concurrent with the federal sentence.

Montoya had previously demonstrated at least some ability to comprehend and exercise his rights as a criminal defendant. When asked by the state trial court whether he had read the form he had previously signed waiving his appeal rights, he responded that he had not, thereby allowing the court to respond and to ensure protection of his rights to due process by allowing him the opportunity to read that form.

B.

Subsequently, the federal court sentenced Montoya to a seventy-eight-month federal sentence, to be served *consecutively to* his state sentence.[3] He thus was placed under a federal detainer, such that he would not begin serving his federal sentence until release from state custody, so there was no federal term of incarceration with which to run his state sentence concurrently, because he would not begin serving his federal time until his release from state custody. His right to a concurrent state sentence would not be triggered, therefore, until after his release from state

---

[3] The decision to run federal sentences concurrently or consecutively with pending sentences is governed by 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

custody—as in the case of parole or habeas relief from state imprisonment (which the federal court would later grant).

C.

Montoya first filed a habeas petition in state court, challenging his state sentence. He argued that TEX. CODE CRIM. P. art. 26:13 required the trial court to admonish him that the terms of the plea agreement regarding concurrent sentencing was not binding on the federal court[4] and that, because of the lack of warning by the trial court or his counsel, his guilty plea was not made knowingly and voluntarily.[5] He additionally demanded withdrawal of his plea on the ground that specific performance of the plea agreement was impossible, and the promises made to him therefore were illusory. Finally, he alleged ineffective assistance of counsel.

The Texas Court of Criminal Appeals rejected the petition without written order, thereby accepting the trial court's finding that, if nothing else, the exchange in open court between the petitioner and the judge (excerpted above) adequately informed Montoya of the terms and limitations of his plea agreement—specifically, that court's lack of power to bind the federal court to concurrent sentencing. The state habeas court also concluded there was no harm from any ineffective assistance of counsel and that the promises made to Montoya were not illusory: His federal sentence was to run consecutively with his state sentence, while his state sentence could run concurrently with a pending federal sentence.

Therefore, the state courts reasoned, Montoya's entitlement to state imprisonment credit for any federal time served would be realized only if he were paroled from state custody, an event that would trigger his federal imprisonment. Only under those particular circumstances would his time in federal imprisonment be credited by the state. But that benefit was enough for the state court to support the plea agreement against a habeas challenge—even though other evidence established that Montoya sought fully concurrent sentences and that Hardwick had told him that the agreement guaranteed fully concurrent sentences, despite counsel's awareness that Texas law did not provide as much because the federal sentence had not yet been imposed.

D.

In early 1997—after the April 24, 1996, effective date of AEDPA—Montoya filed the instant petition for federal habeas relief before the same judge who had sentenced him on the federal carjacking charge. The federal court granted the habeas petition and ordered Montoya's immediate release from Texas custody to the U.S. Marshal so that he could begin service on his federal charge. In doing so, the court noted that, at the time it sentenced Montoya on the federal charge, the judge had held

_____

[4] *See* TEX. CODE CRIM. P. art. 26:13(a) ("Prior to accepting a plea of guilty . . . the court shall admonish the defendant of: (1) the range of the punishment attached to the offense"). *See also* TEX. CODE CRIM. P. art. 26:13(c) ("In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.").

[5] *See* TEX. CODE CRIM. P. art. 26:13(b) ("No plea of guilty . . . shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.").

4

office for only a short time and that were he able to do the sentencing over again, he would do everything in his power to ensure a concurrent federal sentence.

The court then gave the state 120 days to allow Montoya to withdraw his plea and choose either to enter a new plea or proceed to trial. The court stayed its order pending this appeal.

## II.

Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for habeas relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (*i.e.*, application of constitutional law to fact). In other words, a federal habeas court owed no deference to a state court's resolution of such questions of law or mixed questions."[6]

Embodying the principles of federalism, comity, and finality of judgments,[7] AEDPA

substantially restricts the scope of federal review of state criminal court proceedings.[8] As before, a habeas petitioner has the burden under AEDPA to prove that he is entitled to relief.[9] In addition, however, AEDPA directs that

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claimSS

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

_____

[6] *Williams v. Taylor*, 120 S. Ct. 1495, 1516 (2000) (O'Connor, J., concurring). *See also* 28 U.S.C. § 2254(d) (West 1994).

[7] *See Teague v. Lane*, 489 U.S. 288, 306 (1989) ("Habeas corpus has always been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in (continued...)

[7](...continued) effect when a habeas petition is filed.") (quoting *Mackey v. United States*, 401 U.S. 667, 682-83 (1971) (Harlan, J., concurring)). *See also Williams*, 120 S. Ct. at 1506 (Stevens, J., concurring) ("It is perfectly clear that AEDPA codifies *Teague* to the extent that *Teague* requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final.").

[8] *See Williams*, 120 S. Ct. at 1516 (O'Connor, J., concurring) (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners.").

[9] *See id.* at 1518; *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982).

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Thus, federal courts may not grant the writ merely on a finding of error by a state court, but only if a state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts," *Williams*, 120 S. Ct. at 1523SSa contention Montoya does not make.

Absent such a direct conflict with the Supreme Court, the writ is available only if the state court "unreasonably applies [clearly established federal law, as determined by the Supreme Court] to the facts of the prisoner's case," *id.*, or makes "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[10] The standard is one of objective reasonableness.[11]

---

[10] 28 U.S.C. § 2254(d)(2). *See also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

[11] The state makes reference to a standard of "reasonable jurists," under which the federal writ is granted only if the state court has applied federal law in a manner that all reasonable jurists would agree is unreasonable. But after briefing was

(continued...)

Montoya claims, first, that his guilty plea was induced by a breached or illusory promise from the state and therefore was not entered into knowingly, voluntarily, and intelligently, as the Due Process Clause requires. He additionally claims that counsel was constitutionally ineffective by failing to explain the illusory promise to him.

Although the Texas state courts rejected both claims on petition for state habeas relief, the federal court granted relief on both grounds. Concluding that the state court reasonably rejected Montoya's claims, we reverse.

### III.

A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently. *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

---

[11](...continued) completed in this case, the Supreme Court rejected that standard in favor of a purely objective standard of reasonableness. *See Williams*, 120 S. Ct. at 1521-22 ("The placement of this additional overlay [of reasonable jurists] on the 'unreasonable application' clause was erroneous. . . . Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case. The 'all reasonable jurists' standard would tend to mislead federal habeas corpus courts by focusing their attention on a subjective inquiry rather than on an objective one.").

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), *misrepresentation (including unfulfilled or unfulfillable promises)*, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (emphasis added). In other words, where a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Otherwise, "[w]hen a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980). "It is clear that an unfulfilled state promise obtained in return for a plea of guilty will entitle a prisoner to habeas relief." *McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir. 1986).

Thus, a finding that Montoya's plea agreement contained either an illusory or breached promiseSSand that the state court unreasonably found to the contrarySSwould warrant federal habeas relief. Alternatively, if the terms of the agreement, though fulfilled, were misrepresented to MontoyaSSand if the state court unreasonably found to the contrarySShabeas relief also would be justified.

A.

First, we conclude that the state committed no breach of the plea agreement, because a state is not responsible for what might occur in federal criminal proceedings. In doing so, we follow *Hendrix v. Norris*, 81 F.3d 805, 807 (8th Cir. 1996), in which that court announced:

Rather than breaching its agreement . . ., the state scrupulously honored the plea bargain: the state requested that Hendrix serve his state sentences concurrently with his federal sentence, and the state court entered such an order. That federal prosecutors did not make a similar request in federal court does not mean that the state breached its plea agreement; "state prosecutors cannot bind federal prosecutors without the latter's knowledge and consent." *United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994). Neither is the state court responsible for the federal court's imposition of a consecutive sentence: the discretion of a federal sentencing court cannot be limited by a state court's judgment. See *United States v. Adair*, 826 F.2d 1040, 1041 (11th Cir.1987) (per curiam) (federal court could impose sentence consecutive to state sentence, although state court had imposed a concurrent sentence).

The circumstances in *Hendrix* are remarkably similar to those here. The state promised that Montoya's state sentence would run concurrently with his federal sentence, and it did; indeed, his current federal custody is available as credit against his state sentence. The state court therefore acted reasonably in denying habeas on this ground.

Nor was the promise illusory. If Montoya were paroled from state custody (indeed, as he was by the federal district court *a quo*), he would have been transferred to federal custody pursuant to the federal detainer arrangement. Time spent in federal prison then would then have been credited to his state sentence. Granted, only then would there have been another sentence with which Montoya's state sentence could have run concurrently, but that was enough to render the promise not illusory.

### B.

Failure to explain the distinction to Montoya between state courts and prosecutors on the one hand, and federal courts and prosecutors on the other, would constitute sufficient cause for habeas relief, for we do not expect a defendant "instinctively to appreciate the allocation of state and federal prosecuting and sentencing authority." *Finch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995). Thus, if in the course of his state proceedings Montoya was misled into believing that his state plea would bind the federal court and guarantee that his state and federal sentences would run concurrently, his plea was entered into involuntarily and thus "unconstitutionally induced in violation of his due process rights." *Id.* at 916.

A court sitting in habeas review should not, however, lightly find misrepresentation in a plea agreement. The various advantages of the plea bargaining system "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Thus, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings. Solemn declarations in open court carry a strong presumption of verity." *Id.* at 74.

On habeas review, the state court rejected Montoya's claim that the agreement was misrepresented to him. Looking at the exchange between the court, Montoya, and his counsel, one reasonably could disagree with the state court's determination that Montoya had entered into the plea agreement knowingly, voluntarily, and intelligently. To be sure, "[t]he law of this Circuit . . . holds that the defendant's subjective belief alone is not sufficient to invalidate a guilty plea."[12] Thus Montoya must show that the plea agreement had been objectively misrepresented to him.

Were this *de novo* review, federal habeas relief arguably might be warranted. The sentencing court merely explained that he could not bind the federal court. The court did not articulate, for example, what it was that the agreement *did* provideSSnamely, concurrent sentencing effective only upon a parole release from state custody into federal custody. That is, the state court explained, "I can't bind the federal judge to do anything. But what I am saying is that . . . you will be given credit on this sentence with the time you serve in federal court." But the court did not go on to say, for example, that "you will be

---

[12] *Matthews v. United States*, 569 F.2d 941, 943 (5th Cir. 1978). *Cf. Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985) ("Self's 'understanding' . . . that he would serve only ten years and six months of a life sentence, does not constitute a promise or a plea bargain, and hence his continued confinement does not demonstrate that a plea bargain was violated. It, therefore, does not undermine the voluntariness of his guilty plea.").

given credit on this sentence with the time you serve in federal court *only should you be released into federal custody prior to the end of your state sentence*."

The state sentencing court's admonitions therefore might not have been enough to explain the true terms of the agreement, particularly in light of Montoya's assurance from counsel that he would be able to obtain concurrent sentencing as he understood it. One in his shoes might reasonably have assumed, then, that fully concurrent sentencing, though not yet confirmed, was all but a done dealSSjust as the plea agreement between Montoya and the prosecutor, requiring the ultimate approval of the state court, had once been all but complete. Indeed, Montoya might have reasonably believed that, just as with his plea agreement with the state, from which he might have withdrawn had the state court rejected it, so too could he have withdrawn from his state plea had the federal court subjected him to consecutive sentencing, as it later did.

But the deferential review required under AEDPA, forbidding state courts only from unreasonable applications of clearly established federal law as determined by the Supreme Court, constrains us from interfering with the state criminal process by granting federal habeas relief in this case. In *Hendrix*, 81 F.3d at 807-08, the court reasoned as follows:

> We disagree with the district court's conclusion that Hendrix's guilty plea in the state court was invalid. We assume, without accepting, that the state court's apparent failure to warn Hendrix that the federal court need not impose a concurrent sentence could result in an invalid guilty plea. *See, e.g., Finch v.*

*Vaughn*, 67 F.3d 909, 916 (11th Cir. 1995) (habeas petitioner's plea-bargained guilty plea in state court was involuntary because no one had explained that the federal court could reject the state court's imposition of concurrent state and federal sentences).

The state court in fact *did* warn Montoya that the plea agreement bound only the state court. *A fortiori*, his plea agreement was entered into voluntarily and knowingly.

## IV.

To show that he has suffered from unconstitutionally ineffective assistance of counsel, a habeas petitioner must establish two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.[13]

---

[13] *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Hill v. Lockhart*, 474 U.S. 52, 57 (1985) ("Although our decision in *Strickland v. Washington* dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, (continued...)

9

The habeas petitioner has the burden to prove ineffectiveness by a preponderance of the evidence. *See Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir. 1983).

With respect to the second, "prejudice" prong, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Washington*, 466 U.S. at 696. "To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The trial court explained to Montoya that it had no power to bind the federal court, to which Montoya responded: "I understand." The state court was not unreasonable in concluding that any deficiency in Hardwick's representation was constitutionally cured at that time. Montoya therefore cannot satisfy the prejudice prong for an ineffective assistance counsel of claim sufficiently to justify federal habeas relief under AEDPA.

V.

At most, this was a close case for the Texas Court of Criminal Appeals, sitting on habeas review, to determine whether the state sentencing court adequately had explained the terms of the agreement to defeat Montoya's dual claims of unknowing plea and prejudice by ineffective assistance of counsel. The closeness of that case, however, makes plain the path we must take on federal habeas review pursuant to AEDPASSthat is, deference to the state court's reasonable application of clearly established federal law as determined by the Supreme Court. The federal district court may have regretted its decision to sentence Montoya consecutively with the state sentence, but federal habeas review is not an appropriate remedy, for this petition requests a degree of interference with the state criminal justice system that AEDPA expressly forbids.

REVERSED.

---

[13](...continued)
. . . the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process.").

10