Revised March 25, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-21009**
_____

**ALONZO EVANS,**

**Petitioner-Appellee,**

**VERSUS**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF**
**CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

March 8, 2002

Before DeMOSS, GARWOOD, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner-Appellee, Alonzo Evans (Evans), is serving a 30-year prison sentence following his conviction in state court for aggravated robbery, which was enhanced by two prior convictions. Evans filed a habeas corpus petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, in which he claimed his trial counsel was ineffective. The

Respondent-Appellant, Gary L. Johnson, Director of the Texas Department of Criminal Justice, Institutional Division, moved for summary judgment on behalf of the State of Texas (State). The district court denied respondent's motion for summary judgment and granted Evans' habeas corpus petition. Respondent appeals the district court's ruling. The district court's judgment is reversed and rendered.

## I. BACKGROUND

On March 15, 1996, Rolly Itoge (Itoge) and a female friend were approaching the door to his upstairs apartment around midnight, when Evans put a gun to the left side of Itoge's head and demanded his money. Itoge told Evans that he was not going to give him any money, so Evans shot him in the back. While fighting back, Itoge was shot once more. After a struggle, Evans decided to give up and runway.

Wallace McNary (McNary), Itoge's neighbor, heard the gunshots and looked through the peephole of his apartment door. McNary called the police and waited with Itoge until the police and an ambulance arrived. Itoge described his attacker as tall, fair-complected and wearing a colored, striped shirt. Itoge also said his attacker had an eye patch over one eye, and that Itoge had pulled the patch off during the struggle. McNary also described

2

Evans to police and later identified him when the police brought him back to the scene.

Evans was discovered by police walking in a nearby field shortly after the shooting. According to police, Evans attempted to avoid detection and did not stop until the officers actually drew their weapons. He had taken off his shirt, which had blood on it, and tucked it into his pants. Evans was sweating heavily and had fresh scratch marks on his face and neck. In addition, he had an eye patch with a broken strap in his pants pocket.

Evans was found guilty of the crime of aggravated robbery with a deadly weapon by a jury of his peers in the 263rd District Court of Harris County, Texas. On March 26, 1997, the trial judge sentenced Evans to a 30-year term of imprisonment in the Texas Department of Criminal Justice, Institutional Division. Evans filed a direct appeal in the Court of Appeals for the Fourteenth District of Texas at Houston, claiming that the evidence was insufficient to support a conviction for aggravated robbery, and that the trial judge made impermissible comments during voir dire that were so prejudicial that they undermined the fairness of the trial. The transcript reflects that the trial judge made the following remarks to the venire during the voir dire:

> My attitude basically is jury service is not so much volunteer work as it is a duty. You know as citizens of this State, there's no longer a draft for the United States.
>
> There's really not a lot required of you besides all of us to pay our taxes. This is one of

3

the few duties requested and demanded to make sure we all have a safe society.

If you go back to work in the next couple of days–where were you yesterday?

Well, I had jury service.

Oh, I throw that stuff in the trash.

Well, besides the fact we're now having to arrest about 10 percent of the panels that don't show up.  I'd say about 60 percent don't show up.

And they laugh at you and say:  Oh, I don't ever do that.

My attitude is you get what you put into it.  If you're not willing to come down and serve this afternoon, you're going down to the local grocery store.

Between the time you get to the store from the car, somebody bops you on the head, takes your purse or wallet, frankly, I don't think you have much of a complaint.

I think if you're not willing to serve, you ought to not have the right of too much to complain.  It also lets the other person do this.  I've got something better to do.  And if everyone felt that way, believe me I've seen hundreds of excuses.

I go to the jury assembly room once a year.  We rotate in there once a year.  I hear every excuse in the book why I have something better to do than serve on the jury.

Even in the courtroom I hear a hundred different reasons why they cannot serve on the jury.

Lot of those reasons are valid.  Some of those you question.  Frankly, for everyone exercising an excuse, no one would go to trial.

Can you imagine what it would be like to walk around your street and everyone charged with a

crime was out on bond? They were arrested 5 years ago but never gone to trial because there are no juries.

You've done a valuable service being down here. We'll pass out your work excuses in a few moments to excuse you for work today.

If you are picked for the jury, we'll give you work excuses at the end for those of you selected.

The Court of Appeals for the Fourteenth District of Texas affirmed Evans' conviction and sentence on May 20, 1999. The court of appeals held that Evans failed to make a timely and specific objection at the time the comments were made and, therefore, the issues raised were procedurally barred by Texas' contemporaneous objection rule. TEX. R. APP. P. 33.1. Evans did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

On October 29, 1999, Evans filed a state application for writ of habeas corpus. In his application, Evans argued that his trial counsel was ineffective because he failed to object to the trial judge's improper comments, failed to secure testimony of an eyewitness, and failed to request an expert witness and analysis of blood found at the crime scene and on Evans' shirt. The Court of Criminal Appeals denied Evans' application without written order on January 12, 2000.

Evans then filed a timely federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 4, 2000. In his petition, Evans asserted the same issues that he had in his state

5

habeas corpus application. The State moved for summary judgment, which was denied. Instead, the district court conditionally granted Evans' federal application for writ of habeas corpus. In addressing Evans' petition, the district court presented its assertions as follows: "(1) the trial judge's comments made to the venire during voir dire denied [Evans] his Sixth and Fourteenth Amendment rights to a fair and impartial trial; and (2) he was provided with ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments." Thus, the district court, *sua sponte,* raised the claim that the trial judge's comments during voir dire violated Evan's Sixth and Fourteenth Amendment rights to due process. The State now appeals the district court's order granting Evans' petition for a writ of habeas corpus.


## II.  STANDARD OF REVIEW

This Court reviews the district court's findings of fact for clear error, but decides issues of law *de novo*. **Clark v. Scott**, 70 F.3d 386, 388 (5th Cir. 1995). Notably, the petition for habeas relief before this Court is governed by the heightened standard of review provided by AEDPA. AEDPA applies to this action because the petition was filed after the effective date of the act, which was April 24, 1996. AEDPA embodies the principles of federalism, comity, and finality of judgments. **Montoya v. Johnson**, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 2220 (2001). As

6

a result, "AEDPA substantially restricts the scope of federal review of state criminal court proceedings." *Id.* Furthermore, AEDPA instructs:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, neither the district court nor this Court may grant a writ of habeas corpus based solely on a finding of error by a state court. Rather, a writ may be granted only if a state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Without such a direct conflict, a writ will be granted only if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.; Montoya*, 226 F.3d at 404.

7

### III. DISCUSSION

We have before us three issues:  (1) whether the district court improperly raised, *sua sponte*, the issue that the state trial judge's comments during voir dire violated Evan's Sixth and Fourteenth Amendment rights to due process; (2) whether the district court erred when it granted relief on Evans' claim of ineffective assistance of counsel, when counsel failed to object to the state trial judge's comments during voir dire; and (3) whether the district court erred when it granted relief on Evans' claim that he was denied effective assistance of counsel, when counsel failed to perform scientific tests on certain evidence presented at trial, and to secure the testimony of an alleged eyewitness and an expert witness.

### A.    The trial judge's comments during voir dire.

Evans argued in his direct appeal in the Fourteenth Court of Appeals of Texas that the state trial judge's comments during voir dire violated his right to a fair trial under the Sixth and Fourteenth Amendment.  When the Fourteenth Court of Appeals addressed the issue, it concluded that Evans was procedurally barred from raising the issue because he had failed to make a contemporaneous objection.  When Evans filed his state application for a writ of habeas corpus, he did not raise the issue again.

However, the district court, *sua sponte*, raised the claim after Evans petitioned the court for a federal writ of habeas

8

corpus.  On this issue, the district court found:

> [T]he trial judge's comments crossed the line that separates a trial judge's role from that of a prosecutor.  The judge injected himself into the adversarial process by suggesting that the defendant on trial will be back on the streets ready to '[bop] you [venire] on the head take [sic] your purse or wallet' if you do not take this jury service seriously. Moreover, people whose attitude is wrong about jury service, gets what they deserve–people on the streets who have been charged with crimes but never tried.

The State contends that, because the issue was not raised in Evans' state application for a writ of habeas corpus, the issue is both procedurally barred and unexhausted.  Therefore, the State argues that the district court should not have raised the issue, *sua sponte*, when addressing Evans' federal petition.  For the reasons stated below, we disagree with the State's argument that the district court could not raise the issue *sua sponte*.  Nevertheless, we also disagree with the district court's conclusion that Evans' Sixth and Fourteenth Amendment rights were violated.

First, it is well established that a claim is exhausted if "it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray v. Netherlands*, 518 U.S. 152, 161 (1996); *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999).  Second, we recognize that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual

9

> prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Even though the district court's order did not expressly address the contemporaneous objection rule, implicit in its order is the cause and prejudice analysis that is required to overcome the rule. The district court found that the state trial judge's comments "threatened" and "poisoned" the trial process. Again, consideration of the issue as related to the ineffective assistance of counsel was not improper.

However, we cannot reach the same conclusion as the district court. We find that the trial judge's comments during voir dire do not necessitate reversal. We have held:

> [O]ur role is to determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial. To rise to the level of a constitutional error, the...judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor. The judge's intervention in the proceedings must be quantitatively and qualitatively substantial to meet this test.

*United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994) (citations omitted). Therefore, our review of this issue must focus on matters such as the context of the remarks, to whom the remarks were directed, the number and nature of the remarks, and the presence of curative instructions. *United States v. Munoz*, 150

10

F.3d 401, 414 (5th Cir. 1998).

The comments at issue in this case were made to members of the venire. The judge's comments, taken as a whole, make it clear that his intent was to express his belief that the venire members had a duty as citizens to serve on a jury, and that they would have no complaint about being the victim of a violent crime if they avoided jury service. The comments had nothing to do with the case about to be tried before those who were chosen to serve as jurors. And, as the district court noted, "it is unlikely that the jury was aware of the judge's attitude about the defendant's case, in particular, and persons charged with crimes, in general. . . . [T]he trial judge did not mention the petitioner by name or the specifics of his accused crime." While the trial judge's comments were undesirable, we do not believe the trial judge's comments reached a level of prejudice that would have denied Evans a fair trial.

## B. Ineffective assistance of counsel claims.

To establish constitutionally ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient because it fell below an objective standard of reasonableness and was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Furthermore, in order to show prejudice, a petitioner must demonstrate that counsel's error was "so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." ***Id.*** In determining the merits of this issue, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Id.*** at 689.

### i. Counsel's failure to object to the trial judge's comments.

The district court granted habeas relief on the claim that counsel was ineffective for failing to object to the trial judge's comments to the venire. The district court determined that the "trial judge's comments were so prejudicial as to chill the adversarial process, denying the trial counsel a platform from which an objection could be made that would not further prejudice the petitioner's trial." Nevertheless, the court concluded that because counsel did not object, "counsel's performance was both deficient and prejudicial." We disagree with the district court's conclusion.

In his petition for writ of habeas corpus, Evans simply argued that counsel's failure to object could not have fallen within the "wide range of reasonable professional assistance" called for under ***Strickland***. Evans has not convincingly argued that his counsel's failure to object to the trial judge's comments directed at the venire was so prejudicial as to produce a result that was unreliable. Given that we have found that the trial judge's comments were not prejudicial enough to rise to the level of a constitutional violation, it would be futile to conclude that counsel was ineffective for not objecting to the same comments.

12

### ii. Counsel's failure to perform scientific tests on certain evidence presented at trial, and to secure the testimony of an alleged eyewitness and an expert witness.

Evans, in his habeas petition, asserted that his counsel contributed to the jury's verdict of guilt because he failed: (1) to request an analysis of the blood that was on his shirt when he was arrested; (2) to call an expert witness to testify about the blood testing; and (3) to call Itoge's female friend as an eyewitness. First, although Evans did not provide affidavits from the alleged eyewitness or indicate what testimony the eyewitness would give, the district court "presume[d] that the testimony would be favorable to the petitioner." However, complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). The district court engaged in this type of speculation. Therefore, we cannot conclude that counsel's failure to call the alleged eyewitness was ineffective assistance. In addition, "for [Evans] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Evans has not done this.

Second, the district court found to be meritorious Evans' claims that counsel was ineffective for failing to call a

13

scientific expert to testify, and for failing to order scientific testing on Evans' bloody shirt. The district court found that counsel requested funds for testing but that the tests were not part of the record. The district court then presumed that the tests either were not conducted or were not compelling. Regardless, the district court concluded that counsel was ineffective.

However, Evans did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded. Again, Evans' unsupported claims regarding the uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel. *Sayre*, 238 F.3d at 635-36. Furthermore, Evans must be able to show "a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt." *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998). Evans, however, cannot accomplish this task. There was never any question regarding whose blood was on Evans' shirt. After being arrested, Evans stated that the blood on his shirt was his own. At trial, counsel argued that the small amount of blood on the shirt was Evans', and the State never contradicted that assertion. Therefore, there would have been nothing to gain from the testing of the blood or the calling of an expert witness. Therefore, we cannot conclude that Evans' counsel

14

deprived him of a fair trial.

## CONCLUSION

For the foregoing reasons, we hold that Evans was not deprived of effective assistance of counsel. The decision of the district court granting Evans' § 2254 petition is reversed and rendered.

15