# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30222

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2017

Lyle W. Cayce
Clerk

EDWARD RAY TROTTER,

> Petitioner - Appellant,

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

> Respondent - Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:12-CV-764

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

PER CURIAM:*

Petitioner-Appellant Edward Ray Trotter, proceeding pro se, appeals the denial of his habeas petition under 28 U.S.C. § 2254. We affirm.

## I.
### FACTS AND PROCEEDINGS

Trotter was charged in state court with two counts of distribution of a controlled dangerous substance (cocaine) and one count of possession of a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

controlled dangerous substance (cocaine). A jury convicted Trotter as charged in 2001.[1] The trial court determined that he was a third-felony habitual offender and sentenced him to life imprisonment without benefits.[2]

Trotter's conviction and sentence were set aside in 2010 on federal habeas review for a violation of *Batson v. Kentucky*.[3] The district court ordered the state to release Trotter or bring a new trial within 120 days of the judgment.[4]

Soon after his conviction and sentence were vacated, the government offered Trotter, who was charged as a fourth-felony habitual offender, a plea agreement whereby he would plead guilty as a second-felony offender to one count of possession of a Schedule II controlled dangerous substance (cocaine) "over 28 grams less than 200 grams." In exchange, the government offered him a sentencing recommendation of "30 years hard labor, credit for time served, no further enhancements pursuant to the multiple offender bill, and . . . dismiss[al of] all other pending charges." Trotter accepted that offer.

Before accepting Trotter's guilty plea, the court informed him that, on the possession count, he faced "a minimum of five years without benefit of probation, parole, or suspension of sentence, and up to 30 years hard labor, as well as . . . a minimum fine of $50,000 and a maximum fine of $150,000." The court also admonished Trotter that, by pleading guilty as a second-felony offender under La. Rev. Stat. § 15:529.1, he would face 15 to 60 years' imprisonment. Trotter then pleaded guilty to the possession count as a second-

---

[1] *State v. Trotter*, 852 So. 2d 1247, 1249 (La. App. 2 Cir. 2003), *writ denied*, 867 So. 2d 689 (La. 2004).

[2] *Id.* at 1250.

[3] 476 U.S. 79 (1986); *see Trotter v. Warden La. State Penitentiary*, 718 F. Supp. 2d 746 (W.D. La. 2010).

[4] *Trotter*, 718 F. Supp. 2d at 747.

No. 15-30222

felony offender. The court sentenced Trotter "to 30 years hard labor, credit for time served. Said 30 years [were] without benefit of probation, parole, or suspension of sentence." Trotter confirmed that he understood the sentence.

After the court accepted Trotter's guilty plea and imposed his sentence, the following exchange took place:

> **The court:** It's my understanding, under the habitual offender law, it's 30 years is [sic] without probation or suspension; however, you are eligible for parol[e] at some point in time under the provisions of that . . . . Take care, Mr. Trotter.
>
> **Trotter:** You'll never see me again.
>
> **The court:** How long you been in, Mr. Trotter?
>
> **Trotter:** Eleven years, sir.
>
> **The court:** You know, I don't know on the multi-bill, but they are eligible for probation unless it's a life sentence, because then you're not eligible for probation if it's life. But under the statute, you know, it could be suspended or probated, but under the statute he's eligible for parol[e]. So you could be—heck, if you already spent eleven years, I mean, it may not be that much longer.
>
> **Prosecutor:** It will be up to [the Louisiana Department of Public Safety and Corrections ("DOC")].
>
> **The court:** Yeah, DOC will calculate it, but under the life-provision, there's no probation, parol[e], or suspension. That's the difference; you see?
>
> **Trotter:** Yes, sir.
>
> **The court:** It's the parol[e] aspect of it.
>
> . . .
>
> **The court:** So yeah, he still have been—under the old statute, basically saying no parol[e]. Well this is probably—you know, look, I don't know what DOC will do, but I—and I don't know what the board would do coming up, but under the statute, you're eligible for parol[e], so you never know.
>
> **Trotter:** Yes, sir. Thank you, your honor.
>
> **The court:** All right. Yes, sir. Take care, Mr. Trotter.

3

No. 15-30222

The DOC subsequently determined that, because of his four felony convictions, Trotter was not eligible for parole.

Trotter filed an application for post-conviction relief in Louisiana state court. He contended that (1) his guilty plea was not made knowingly or intelligently because he was induced to plead guilty by the unfulfilled promise that he would be eligible for parole, and (2) his attorney provided ineffective assistance of counsel by persuading him to plead guilty on the basis that he would be eligible for parole. The state courts denied relief, and Trotter filed a petition under 28 U.S.C. § 2254 for federal habeas review of those claims. The federal district court denied Trotter's petition and denied a certificate of appealability. Trotter timely appealed, and this court granted a certificate of appealability.

II.
STANDARD OF REVIEW

"In a habeas appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court."[5] We may grant a state prisoner's application for a writ of habeas corpus only if his incarceration was the product of a state court adjudication that "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6] "This is a difficult to meet and highly deferential standard for

---

[5] *Lefevre v. Cain*, 586 F.3d 349, 352 (5th Cir. 2009).

[6] 28 U.S.C. § 2254(d); *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008). We review questions of law and mixed questions of law and fact under § 2254(d)(1) and questions of fact under § 2254(d)(2). *Richardson*, 537 F.3d at 472.

No. 15-30222

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[7]

## III.
### ANALYSIS

Trotter maintains that he is entitled to relief because (1) his guilty plea was not made knowingly or intelligently because it was based on the unfulfilled promise that he was eligible for parole, and (2) his attorney provided ineffective assistance of counsel by persuading him to plead guilty on the basis that he would be eligible for parole.

A. Voluntariness of His Guilty Plea

We uphold a guilty plea on habeas review when it is entered knowingly, voluntarily, and intelligently—that is, when the defendant understands the charge and its consequences.[8] "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt."[9] A defendant understands the consequences of his guilty plea with respect to sentencing if he knows "the maximum prison term and fine for the offense charged."[10] The court is not required to inform a defendant of his parole eligibility.[11] Nevertheless, "where

---

[7] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted) (internal quotation marks omitted).

[8] *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *see Burdick v. Quarterman*, 504 F.3d 545, 547 (5th Cir. 2007); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995); *Boykin v. Alabama*, 395 U.S. 238, 244 (1969).

[9] *James*, 56 F.3d at 666.

[10] *Burdick*, 504 F.3d at 547 (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)); *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) ("The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.").

[11] *Barbee*, 678 F.2d at 635–36; *LeBlanc v. Henderson*, 478 F.2d 481, 483 (5th Cir. 1973).

a plea 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'"[12] "[W]hen a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea."[13]

Nothing in the record reflects that the terms of Trotter's plea agreement included parole eligibility. As explained by the prosecutor to the state trial court before Trotter entered his plea, the agreement entailed Trotter's pleading guilty to one count of possession of crack cocaine, "over 28 grams less than 200 grams," in exchange for (1) the government's allowing Trotter to plead as a second-felony habitual offender rather than a fourth-felony habitual offender, (2) a "sentence recommendation of 30 years hard labor, credit for time served," (3) no further enhancements pursuant to the multiple offender bill, and (4) dismissal of all other pending charges.

The court thoroughly informed Trotter of his rights before it accepted his plea, including that he was waiving his right to a trial by jury, his right to confront the witnesses against him, and his right against self-incrimination. The court also admonished him of the minimum and maximum sentence and fine he faced, asked whether his plea was voluntary, and gave him an opportunity to ask his attorney questions regarding the plea. The court then accepted his plea and sentenced him to "30 years hard labor, credit for time served." The court explained that "[s]aid 30 years are without benefit of probation, parole, or suspension of sentence." The court then asked (1) whether

---

[12] *Montoya*, 226 F.3d at 405 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

[13] *Id.* (quoting *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)).

Trotter understood his sentence, to which he said yes, and (2) whether he had any questions about his sentence, to which he said no.

Only after it accepted Trotter's guilty plea and imposed his sentence "without the benefit of probation [or] parole" did the court speculate as to whether Trotter might be eligible for parole "at some point." In response, the prosecutor correctly noted that whether Trotter will be eligible for parole is "up to DOC," and the court agreed.[14]

Trotter has failed to demonstrate that the district court erred in concluding that his plea agreement was not breached or that his plea was knowing and voluntary, as Trotter has failed to show that his plea agreement contained any provision regarding parole eligibility or that his plea was made unknowingly or involuntarily. His first assessment of error fails.

B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the attorney's representation fell below an objective standard of reasonableness, and (2) the deficient representation prejudiced the petitioner.[15] "In evaluating trial counsels' performance for deficiency, [there exists] a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[16] The petitioner must demonstrate that "the errors were so egregious as to deprive the defendant of the 'counsel'

---

[14] Louisiana law does not preclude parole eligibility for a defendant convicted of possession of 28 grams or more, but less than 200 grams, of cocaine. *See* LA. REV. STAT. § 40:967(F)(1)(a). Although as a second-felony offender, Trotter might have been eligible for parole, *see* LA. REV. STAT. §§ 15:529.1(A)(1), 15:574.4, the DOC determines parole eligibility and, when determining a prisoner's eligibility, is not bound by a court's determination or adjudication of the prisoner's habitual offender status under La. Rev. Stat. 15:529.1. *See Townley v. Dep't of Pub. Safety & Corr.*, 681 So. 2d 951, 953 (La. 1996).

[15] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[16] *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013) (per curiam) (quoting *Strickland*, 466 U.S. at 689).

guaranteed by the Sixth Amendment."[17] To establish prejudice, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18]

Trotter has failed to support his claim that his attorney informed him that he would be eligible for parole, let alone that his attorney's representation fell below an objective standard of reasonableness. As noted above, the record reflects that, prior to accepting Trotter's plea and sentencing him, the court made clear that he would not be eligible for parole. Trotter has not shown deficient representation or prejudice. His second assessment of error fails.

## IV.
## CONCLUSION

The district court's denial of Trotter's petition for writ of habeas corpus is AFFIRMED.

---

[17] *Id.*

[18] *Id.* at 388.