Juan Carlos VARGAS, Petitioner,

v.

Nathaniel QUARTERMAN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

No. EP–07–CA–92–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 13, 2008.

Juan Carlos Vargas, Amarillo, TX, pro se.

Fredericka Sargent, Gena Blount Bunn, Office of the Attorney General, Austin, TX, for Respondents.

### MEMORANDUM OPINION AND ORDER

DAVID BRIONES, District Judge.

Before the Court is Petitioner Juan Carlos Vargas's "Petition for a Writ of Habeas Corpus by a Person in State Custody" pursuant to 28 U.S.C. § 2254 ("Petition") [Docket No. 1]. The dispositive question therein is whether the collateral estoppel component of the Fifth Amendment Double Jeopardy Clause [1] should have preclud-

---

1. The Double Jeopardy Clause states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. It is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

ed Vargas's attempted capital murder conviction.[2] After carefully examining the record and for the reasons set forth herein, the Court finds the State was collaterally estopped from convicting Vargas for this offense and it will accordingly grant his Petition.

## I. BACKGROUND

On June 7, 1997, a group of teenagers traveled to Ciudad Juarez, Mexico, immediately across the international boundary from El Paso, Texas, in a Toyota driven by George Serna and a Honda driven by Katy Basaric. As they returned to El Paso early the next morning, a Camaro driven by Vargas pulled alongside Serna's vehicle on the international bridge and the occupants of both vehicles started arguing.

Serna and Basaric's cars passed through customs before Vargas's Camaro and parked on the American side of the bridge. As the Camaro passed the parked vehicles, Vargas and his passenger, Hector Aguirre, signaled for the occupants of Serna's Toyota to follow them. All three vehicles traveled a short distance to an area known as Dudley Field.

Upon arriving at Dudley Field, all three vehicles stopped. According to a witness, Vargas exited his Camaro, pulled out a pistol, and began shooting in the direction of Serna's Toyota. Aguirre also got out of the Camaro and went to the passenger side of Basaric's Honda while Vargas walked to the driver's side of Serna's Toyota and shot Serna in the chest. Vargas then fired two more shots into the Toyota's rear seat occupied by Dagoberto Contreras, Michael Jimenez, and Adam Lopez, but did not hit anyone. After the shooting

spree, Vargas and Aguirre returned to the Camaro and drove off. Serna staggered to Basaric's Honda, was taken to a local hospital, and died.

On August 12, 1997, a state grand jury sitting in El Paso, Texas, returned a twelve-count indictment[3] against Vargas for murder, aggravated assault, deadly conduct, and attempted murder ("Vargas I").[4] Count I alleged Vargas murdered George Serna:

> ... [O]n or about the 8TH DAY OF JUNE, 1997 ... JUAN VARGAS ...
> PARAGRAPH A
> did ... intentionally and knowingly cause the death of an individual GEORGE SERNA by shooting GEORGE SERNA with a firearm ...
> PARAGRAPH B
> ... intentionally with the intent to cause serious bodily injury to GEORGE SERNA commit an act clearly dangerous to human life namely, shoot GEORGE SERNA with a firearm which caused the death of GEORGE SERNA ...[5]

Counts IX through XII alleged Vargas, "with the specific intent to commit the offense of murder, intentionally and knowingly attempt[ed] to cause the death of" Adam Lopez, Michael Jimenez, Dagoberto Contreras, and Marco Telez.[6] Immediately before Vargas's trial, the district attorney moved to dismiss all but Count I, the murder count, of the indictment.[7] The trial court granted the motion and the case proceeded to trial. After the jury heard the evidence and arguments of counsel, the trial court instructed the jury on the applicable law. The trial court first defined

2. *State v. Vargas,* No. 980D08276 (243rd Dist. Ct., El Paso County, Tex. Sep. 3, 1999).

3. State Habeas R. at 1090–1101.

4. *State v. Vargas,* No. 970D06949 (243rd Dist. Ct. El Paso County, Tex. Aug. 12, 1998).

5. State Habeas R. at 1090.

6. *Id.* at 1098–1101.

7. Pet. Ex. F.

various terms used in the charge including intentionally, knowingly, and recklessly.

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct, or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.[8]

The trial court then referred to the indictment and reviewed the jury's options.

### AS TO PARAGRAPH A OF THE INDICTMENT

... if you believe ... **JUAN VARGAS** ... intentionally or knowingly cause[d] the death of an individual **GEORGE SERNA** by shooting **GEORGE SERNA** with a firearm, then you will find the defendant guilty of **MURDER** ...

### AS TO PARAGRAPH B OF THE INDICTMENT

... if you believe ... **JUAN VARGAS** ... intentionally, with the intent to cause serious bodily injury to **GEORGE SERNA,** commit[ted] an act clearly dangerous to human life, namely shoot **GEORGE SERNA** with a firearm which caused the death of **GEORGE SERNA,** then you will find the defendant guilty of **MURDER** ...

### AS TO THE LESSER INCLUDED OFFENSE OF MANSLAUGHTER

[i]f you find from the evidence ... **JUAN VARGAS,** did recklessly cause the death of an individual, **GEORGE SERNA,** by shooting him with a firearm, to wit a gun, then you will find the defendant guilty of **MANSLAUGHTER** ...[9]

On August 12, 1998, the jury found Vargas guilty of manslaughter,[10] the lesser included offense, and assessed his punishment at twenty years' confinement and a $10,000 fine.[11] Vargas did not appeal.

Less than two weeks later, on August 25, 1998, a state grand jury returned a one-count indictment[12] against Vargas for an offense arising from the same shooting incident ("Vargas II").[13] The indictment alleged that Vargas, "with the specific intent to commit the offense of capital murder, attempt[ed] to cause the death of more than one person, namely two of the following three persons: Adam Lopez, Michael Jimenez, and/or Dagoberto Contreras, during the same criminal transaction, by shooting at said persons with a firearm ..."[14] At Vargas's second trial, the trial court again charged the jury on the applicable law.

Our law provides that a person commits **MURDER** when he intentionally or knowingly causes the death of an individual.

A person commits **CAPITAL MURDER** when such person intentionally or knowing causes the death of two individuals during the same criminal transaction.

---

8.  State Habeas R. at 1139.

9.  *Id.* at 1140–41.

10.  *Id.* at 1150.

11.  *Id.* at 1102–04.

12.  *Id.* at 1.

13.  *State v. Vargas,* No. 980D08276 (243rd Dist. Ct., El Paso County, Tex. Sep. 3, 1999).

14.  State Habeas R. at 1.

A person commits an offense if, with the specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. This is an attempt to commit an offense. . . .

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

### AS TO ATTEMPTED CAPITAL MUR-DER

. . . if you find . . . JUAN CARLOS VARGAS, did, with the specific intent to commit the offense of capital murder, attempt to cause the death of more than one person, namely two of the following three persons: Adam Lopez, Michael Jimenez, or Dagoberto Contreras, during the same criminal transaction, by shooting at said persons with a firearm, and said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of an attempt to commit capital murder . . . [15]

After deliberating, the jury found Vargas guilty of attempted capital murder [16] and the court assessed his punishment at seventy-five years' imprisonment and a $7,500 fine.[17]

In his direct appeal, Vargas raised four points of error.[18] First, he asserted the trial court admitted improper hearsay evidence. Second, Vargas challenged the fac-

tual sufficiency of the evidence supporting his conviction. Third, he argued the trial court erred in excluding relevant testimony and evidence during the guilt stage, and admitting irrelevant testimony and evidence during the punishment phase. Fourth, Vargas claimed the prosecutor made an improper comment on Vargas's failure to testify during his closing argument. The Texas Eighth Court of Appeals rejected all Vargas's points of error and affirmed the judgment.

In his state application for a post-conviction writ of habeas corpus, Vargas asserted three grounds for relief.[19] First, he claimed the doctrine of collateral estoppel barred his prosecution for attempted capital murder. Vargas noted the jury in his first trial determined he did not have the specific intent to kill Serna. Thus, Vargas argued, he could not have formed the specific intent to murder the three passengers in the back seat immediately after he shot Serna.

As a result of the Murder trial of George Serna, Applicant was found guilty of Manslaughter which is a lesser included offense of murder. Manslaughter does not require evidence of an intent to kill, indeed, it is when evidence arises in a murder case that reflects a lack of intent to kill, that Manslaughter becomes a lesser included offense of Murder. There can be no such thing as Attempted Manslaughter, since AT-TEMPT by it's [sic] very terms requires specific intent to commit the offense . . . . In the subsequent trial . . . the Applicant was found guilty of Attempted Capital Murder. This charge arose out of the same criminal episode. In order

15. *Id.* at 71–72.

16. *Id.* at 79.

17. *Id.* at 2–4.

18. *Vargas v. State*, No. 08–99–00344–CR, 2001 WL 1357437 (Tex.App.-El Paso Nov. 6, 2001, pet. ref'd).

19. State Habeas R. at 1021–22.

to obtain the conviction for Attempted Capital Murder the State had to prove that Applicant 'INTENTIONALLY AND KNOWINGLY' ATTEMPTED to murder Adam Lopez, Michael Jimenez, and Dagoberto Contreras .... The Doctrine of Collateral Estoppel precluded the State from relitigating the Applicant's state of mind during the criminal episode.[20]

Second, Vargas alleged his trial counsel provided constitutionally ineffective assistance. He explained "[t]rial counsel was aware that Applicant had undergone a previous prosecution because counsel was present ... [but] failed to raise the issue of Double Jeopardy ...."[21] He further claimed his trial counsel failed to investigate, failed to present mitigating and exculpatory evidence, failed to correctly preserve error, and appeared to bolster the prosecutor's case.[22] Vargas also alleged his trial counsel promised him the State would dismiss the attempted capital murder charge against him within six months after he paid the lawyer a retainer.[23] Third, Vargas averred his appellate counsel also provided ineffective assistance. He claimed his appellate counsel should have raised the double jeopardy claim in his direct appeal.[24]

After reviewing Vargas's habeas corpus writ application and record, the trial court entered its findings of fact and conclusions of law.[25] In addressing Vargas's first ground for relief, it concluded Vargas could have fired the shots with different mental states.

Because applicant first shot Serna, which that jury concluded was a reckless act resulting in a manslaughter conviction, but then fired other shots into the back seat occupied by the complainants in this cause, those additional and separate shots fired at different complainants could have been fired with a different—and higher—culpable mental state such that the instant prosecution and conviction for attempted capital murder was not barred by applicant's earlier conviction for reckless manslaughter.[26]

The trial court also determined Vargas had failed to state his ineffective assistance of counsel claims on the form mandated by the Texas Court of Criminal Appeals.[27] Thus, it concluded, these claims were without merit and should be denied.[28]

The Texas Court of Criminal Appeals reviewed the record and determined Vargas had adequately alleged ineffective assistance of counsel claims which, if true, might entitle him to relief. Accordingly, it ordered the trial court to provide Vargas's trial counsel with an opportunity to respond to the claims.

20. *Id.* at 1076–78.

21. *Id.* at 1079.

22. *Id.* at 1080–83.

23. *Id.* at 1083.

24. *Id.* at 1084.

25. *Id.* at 1153–1155.

26. *Id.* at 1154.

27. *See* TEX.R.APP. P. 73.1 ("An application for post conviction habeas corpus relief in a felo-

ny case without a death penalty, under Code of Criminal Procedure article 11.07, must be made in the form prescribed by the Court of Criminal Appeals in an order entered for that purpose.... The person making the application must provide all information required by the form. The application must specify all grounds for relief, and must set forth in summary fashion the facts supporting each ground. The application must not cite cases or other law. Legal citations and arguments may be made in a separate memorandum. The application must be typewritten or handwritten legibly.").

28. State Habeas R. at 1155.

After conducting a hearing on Vargas's claims,[29] the trial court entered supplemental findings of fact and conclusions of law.[30] It concluded Vargas's claim that collateral estoppel barred his prosecution should be denied for two reasons.[31] First, the claim should have been raised in his direct appeal and it was, therefore, not cognizable in a post-conviction writ proceeding. Second, the claim was without merit because the jury's finding that Vargas was recklessness when he shot Serna was not necessarily conclusive as to his culpable mental state when he turned the pistol and fired on the backseat passengers. It additionally concluded that his trial counsel did not provide constitutionally ineffective assistance. The trial court reasoned Vargas's collateral estoppel claim was without merit and his attorney's decision not to pursue it was reasonable. Further, it determined his trial counsel's (1) preparation was not in any way deficient, (2) strategic decisions concerning witnesses and evidence were plausible and reasonable, and (3) courtroom actions did not bolster the State's case. Finally, the trial court found Vargas's trial counsel had not made promises concerning the outcome of his case. The Court of Criminal Appeals thereafter denied Vargas's application without written order on the findings of the trial court.[32]

The Court has liberally read Vargas's instant Petition.[33] It understands Vargas to assert three grounds for relief. First, he claims collateral estoppel barred his prosecution for attempted capital murder.[34] He reasons "Applicant's state of mind was resolved in the first trial; therefore, the State was barred by the Doctrine of Collateral Estoppel from relitigating that fact in the second trial." [35] Second, he asserts his trial counsel provided ineffective assistance when he failed to raise the double jeopardy claim, failed to investigate his case, failed to present mitigating and exculpatory evidence, and appeared to bolster the prosecutor's case.[36] Vargas explains "during direct examination of Hector Aguirre, counsel failed to elicit the fact that Applicant [told Aguirre that he] obtained the gun from George Serna during the struggle." [37] Additionally, Vargas claims his trial counsel failed to properly object when the trial court excluded evidence recovered from the victim's car which suggested gang affiliation.[38] Third, Vargas claims his appellate counsel provided ineffective assistance when he failed to raise a double jeopardy claim in his direct appeal.[39]

## II. *LEGAL STANDARD*

"[C]ollateral review is different from direct review," [40] and the writ of habeas

---

29. Hearing on Writ R. at 1–42.

30. Supplemental State Habeas R. at 907–912.

31. *Id.* at 910.

32. Hearing on Writ R. at cover.

33. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a *pro se* pleading to encompass any allegation which may raise a claim for federal relief).

34. Pet. at 7.

35. Pet'r's Mem. in Supp. at 7.

36. Pet. at 7.

37. Pet'r's Mem. in Supp. at 13.

38. *Id.* at 14–15.

39. Pet. at 7.

40. *Brecht v. Abrahamson,* 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

corpus is "an extraordinary remedy," [41] reserved for those petitioners whom "society has grievously wronged." [42] It "is designed to guard against extreme malfunctions in the state criminal justice system." [43] Thus, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." [44] They must generally defer to state court decisions on the merits [45] and on procedural grounds. [46] They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. [47] They should also be mindful of the significant social costs including the time and expense involved in retrying a criminal case. Accordingly, a federal court should deny a claim decided by a state court on the merits unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. [48]

The "contrary to" and "unreasonable application" clauses have independent meanings. [49] A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently the Supreme Court has done on a set of materially indistinguishable facts. [50] A court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. [51] The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable. [52]

A state court's determination of underlying factual issues is presumed correct, and a petitioner has the burden to rebut the presumption with clear and convincing evidence. [53] Mere disagreement with a state court is not enough; the standard is one of objective reasonableness. [54]

With these principles in mind, the Court turns to Vargas's claims.

41. *Id.*

42. *Id.* at 634, 113 S.Ct. 1710.

43. *Id.* (citing Justice Stevens concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

44. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir.1986).

45. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002).

46. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir.1998).

47. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir.1996).

48. 28 U.S.C.A. § 2254(d) (West 2008).

49. *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

50. *Id.* at 405–406, 120 S.Ct. 1495.

51. *Id.*, at 407–08, 120 S.Ct. 1495; *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir.2000).

52. *Williams*, 529 U.S. at 409–410, 120 S.Ct. 1495.

53. *Id.* at § 2254(e)(1).

54. *Montoya*, 226 F.3d at 404.

## III. *ANALYSIS*

Vargas claims collateral estoppel barred his conviction for attempted capital murder.[55] He argues "it is clear that a fact issue, i.e. whether Applicant had the 'intent' to commit murder, has been found adversely to the State.... There can be no such thing as 'attempted manslaughter' since 'attempt' by its very terms requires specific intent to commit the offense."[56]

The underlying idea behind double jeopardy is the notion that the State should not be allowed to make repeated attempts to convict an individual for an alleged offense.[57] Blackstone carried the concept into our jurisprudence through his *Commentaries on the Laws of England*, first published in four volumes between 1765 and 1769. "'[T]he plea of *autrefoits acquit*, or a former acquittal,' he wrote, 'is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.'"[58]

In the seminal case of *Ashe v. Swenson*,[59] the Supreme Court determined the concept of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy."[60] Collateral estoppel, or, in modern usage, issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[61] In a criminal case, collateral estoppel may either bar a subsequent prosecution or prevent relitigating particular facts necessarily established in a prior proceeding.[62] In order for the doctrine of collateral estoppel to apply, the issue or fact must necessarily have been decided in favor of the defendant in the first trial.[63] To determine whether collateral estoppel principles apply in a particular case, a court must employ a two-step analysis.[64] A court must discern (1) which facts were "necessarily decided" in the first trial; and (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.[65] A court is instructed to apply collateral estoppel with realism and rationality.[66] Thus, if a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration, the prior acquittal will not be taken as deciding that particular issue.[67]

55. Pet. at 7.

56. Pet'r's Mem. in Supp. at 6.

57. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ("The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.").

58. *Benton*, 395 U.S. at 795, 89 S.Ct. 2056 (quoting WILLIAM BLACKSTONE, 4 COMMENTARIES *335).

59. 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

60. *Id.* at 445, 90 S.Ct. 1189.

61. *Id.* at 443, 90 S.Ct. 1189.

62. *United States v. Caucci*, 635 F.2d 441, 448 (5th Cir.1981).

63. *Johnson v. Estelle*, 506 F.2d 347, 350 (5th Cir.1975).

64. *United States v. Yeager*, 521 F.3d 367, 371 (5th Cir.2008).

65. *Neal v. Cain*, 141 F.3d 207, 210 (5th Cir. 1998).

66. *De La Rosa v. Lynaugh*, 817 F.2d 259, 263 (5th Cir.1987).

67. *Wright v. Whitley*, 11 F.3d 542, 545 (5th Cir.1994).

The defendant in *Ashe* argued his acquittal in a prosecution for robbing a participant in a poker game barred his subsequent prosecution for robbing another participant in the same game.[68] After cautioning that criminal collateral estoppel should not be applied in a "hypertechnical" manner, the Supreme Court wrote:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.[69]

After reviewing the record, the Court concluded the only rational basis for Ashe's acquittal at his first trial was that the jury had determined Ashe was not the robber.[70] Therefore, the State was collaterally estopped from relitigating whether Ashe was the robber before a different jury in the second prosecution.[71]

The United States Court of Appeals for the Fifth Circuit applied the *Ashe* principles in *Green v. Estelle,*[72] where two boys were abducted, placed in a car trunk, and killed by a volley of gunfire. Although the record showed the defendant shot the two victims almost simultaneously, the State elected to prosecute the two homicides separately.[73] In first trial, the jury found the defendant guilty of murder without malice. In his second trial, the trial court overruled the defendant's collateral estoppel objection and the defendant pleaded guilty to murder with malice in exchange for the State's promise not to seek the death penalty. In his subsequent federal habeas corpus petition, the defendant "argued ... that his conviction in the second murder trial was obtained in violation of his constitutional guarantee against double jeopardy. Specifically, he claimed that the issue of his malice was conclusively determined in the first trial and that under the collateral estoppel principles ... the state was precluded from relitigating that issue in his second trial."[74] "The state argue[d] that [the defendant's] state of mind might have changed between the two killings. In other words, it claim[ed] that although [the defendant] did not act with malice as to [the first victim], he might have acted with malice as to [the second victim]."[75] The Fifth Circuit rejected "this contention as patently unreasonable"[76] and held the defendant's conviction of murder without malice for killing one boy precluded, on the basis of collateral estoppel, a subsequent conviction for murder with malice for killing the second boy.[77]

The Fifth Circuit addressed an analogous set of facts in *De La Rosa v. Lynaugh.*[78] In *De La Rosa,* the defendant entered a bar, started shooting, and caused two deaths. The State pursued murder convictions in separate trials. A jury found the defendant guilty of voluntary manslaughter for killing the first victim. A separate jury then found the de-

---

68. *Ashe,* 397 U.S. at 439, 90 S.Ct. 1189.

69. *Id.* at 444, 90 S.Ct. 1189.

70. *Id.* at 445, 90 S.Ct. 1189.

71. *Id.* at 446, 90 S.Ct. 1189.

72. 601 F.2d 877 (5th Cir.1979).

73. *Id.* at 879.

74. *Id.* at 878.

75. *Id.*

76. *Id.*

77. *Id.* at 879.

78. 817 F.2d 259 (5th Cir.1987).

fendant guilty of murder for killing the second victim. In his federal habeas corpus petition, the defendant asserted his confinement based on the second verdict unconstitutionally violated the collateral estoppel doctrine. After reviewing his petition, the Fifth Circuit explained "[c]ollateral estoppel is not automatically found where two distinct crimes arise out of the same transaction . . . . The relevant inquiry here remains whether sufficient evidence exists for a rational trier of fact to find that the defendant's state of mind did change between the criminal acts."[79] However, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[80] The Fifth Circuit concluded that after the jury found the defendant acted with the reduced mental state of sudden passion in the first trial, the State was collaterally estopped from relitigating his mental state in the second trial in an effort to establish the higher state of mind required for murder.[81]

The Corpus Christi Court of Appeals reached a similar conclusion in *Garcia v. State.*[82] In that case, a street brawl erupted from the arrest of the defendant's brother and sister. During the melee, the defendant shot a police officer with a shotgun. Another officer testified that he heard the shot and saw his partner fall to the ground. When he turned, he saw the defendant pump a shotgun and fire at him. The officer was able to jump behind a wall and out of the line of fire. The defendant was tried for capital murder for shooting the first police officer, but was convicted of voluntary manslaughter. The defendant then challenged his indictment for the attempted capital murder of the surviving officer. The appellate court, relying on *Green*, determined the two separate criminal acts involved one state of mind. It then found the State failed to introduce sufficient evidence on which a reasonable jury could find the defendant altered his state of mind. The appellate court accordingly reversed the trial court's judgment and remanded the case with instructions to dismiss the indictment.

The factual similarities between *Green, De La Rosa, Garcia*, and the instant case are striking. Here, Vargas's trial counsel reports the state presented the same evidence in Vargas I and Vargas II.

79. *De La Rosa*, 817 F.2d at 266 n. 13.

80. *Id.* at 263 (citing *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189).

81. *Id.* at 268.

82. 718 S.W.2d 785 (Tex.App.-Corpus Christi 1986). After the Texas Court of Criminal Appeals granted the state's petition for discretionary review, but before oral argument, Garcia's voluntary manslaughter conviction was reversed. This led a majority of the court to conclude that:

> [N]ot only is the conviction of voluntary manslaughter no longer valid and final, there will be no conclusive judgment on that matter until the appellant receives a new trial. A claim of collateral estoppel cannot flow from an invalid judgment of conviction which is not final.

*Garcia v. State*, 768 S.W.2d 726, 729 n. 2 (Tex.Crim.App.1987).

Four judges dissented. In a well-reasoned opinion, the dissenters wrote:

> When the jury found appellant guilty of voluntary manslaughter, in the Serna cause, it necessarily acquitted him of the offenses of capital murder and murder of Officer Serna. (citations omitted). Thus, for purposes of collateral estoppel, appellant has a valid and final judgment of acquittal.

*Id.* at 730 (Teague, J., dissenting). Ultimately, a federal habeas court agreed with the dissenting judges and held collateral estoppel barred Garcia's prosecution for attempted capital murder. *Garcia v. Garza*, 729 F.Supp. 553, 556 (S.D.Tex.1989).

I was present at Mr. Vargas' first trial and was intimately familiar with the State's theory of prosecution and all of the State's witnesses and evidence. And as the State's evidence at the second trial was basically the same, I feel that the first trial in effect served as a dress rehearsal for the second trial and that I was thus fully and adequately prepared for the second trial.[83]

In Vargas II, Adam Lopez, a passenger in the back seat of Serna's Toyota during the shooting, described in his trial testimony how Vargas discharged his weapon into the car during a very short, though unspecified, time period.

Q. Now, when you turned down onto that street, by the old Dudley Field, what happened?

A. Well, as soon as we turned down the street, the black Camaro stopped right in front of us and we stopped a few car length away from them, behind you. As soon as we stopped, he got off the car and he shot the first shot right as soon as he got off the driver's side.

Q. Then what happened?

A. Then, after he shot that first bullet, everybody stayed in the car. And he came up to the car and shot George [Serna] through the window, and he fired two extra bullets at me and people in the back seat.

. . . .

Q. And what happened? What were you doing during this time?

A. Everybody was ducking down into the seats, and I had froze, so I had slid over to the side. But I had still been sitting in an upright position further from the window. That's when the two shots were fired.[84]

Dagoberto Contreras sat in the back of Serna's Toyota with Lopez. He agreed the shooting incident was brief.

A. As soon as the Camaro stopped, the two men ran off. And as soon as they got off we heard gunfire.

Q. Then what did you see?

A. The front—well, the front windshield had gotten hit and all of us like crunched together like kind of for safety. And then the driver approached the vehicle and shot into the front window.

Q. Okay. Which side of George Serna's car was—did the driver go to?

A. It would be the left side, the driver's side.

Q. And what did he do?

A. He started shooting in the front window.

Q. Which window?

A. That would be George Serna's, the driver's window.

Q. The one on the side?

A. Yes, ma'am.

Q. Then what happened?

A. Then he started taking some shots to the back window.

Q. Okay. Which window are you talking about, specifically?

A. That would be right behind George Serna on the left-hand side, where Adam was sitting.[85]

In his closing, the prosecutor did not suggest Vargas's state of mind changed after he shot Serna. On the contrary, he argued Vargas intentionally tried to kill everyone in the car.

So everybody who is not engaged, everybody who is not currently in the fight, is telling you exactly the same thing. There is a shot to the window,

83. Supplemental State Habeas R. at 904 (Aff. of Frank Macias).

84. Trial Tr., Vol. 2, at 237–38.

85. Trial Tr., Vol. 3, at 7–8.

George [Serna] is shot, then there are shots to our side window that knocks it down, and shots through. Is he trying to kill everybody in the car? Again, just take a look at the evidence and you will see, he is methodical and he's thorough. He starts by shooting at the front. He moves down the side, shoots in this window. Moves down the side and shoots in this window. Do you think he is trying to kill everybody in the car or not?

If they were doing it to people in the real world—and this is the real world—what conclusion can you possibly come to, other than he is trying to shoot every single person in the car? That's what he is doing. That's what attempted capital murder is. And he's guilty of it.[86]

█ In Vargas I, the trial court defined the terms intentionally, knowingly and recklessly in its charge to the jury.[87] It then reviewed the indictment and identified the elements of murder and the lesser included offense of manslaughter.[88] It explained "[i]f you find from the evidence . . . **JUAN VARGAS,** did recklessly cause the death of an individual, **GEORGE SERNA,** by shooting him with a firearm, to wit a gun, then you will find the defendant guilty of **MANSLAUGHTER** . . ." [89] The jury, upon deliberating the evidence, found Vargas guilty of manslaughter.[90] Thus, the jury "necessarily decided" [91] Vargas acted recklessly, not intentionally or know-

ingly. Based on the evidence, jury charge, and verdict, it is inconceivable that the Vargas I jury found Vargas guilty of manslaughter for any reason other than his mental state at the time of the incident.[92]

In Vargas II, the indictment alleged that Vargas, "with the specific intent to commit the offense of capital murder, attempt[ed] to cause the death of more than one person . . . ." [93] Thus, the question becomes whether any rational jury could find Vargas's state of mind changed between the time he shot Serna and the time he shot at Lopez, Jimenez, and Contreras.[94] The record shows Vargas knew Serna's Toyota contained multiple passengers. The victims described how Vargas exited his Camaro, shot a volley of bullets into Serna's car, and returned to his vehicle.[95] The evidence established Vargas shot at the backseat passengers immediately after he shot Serna in the chest. Despite the jury's verdict in Vargas I that Vargas acted recklessly, the prosecutor in Vargas II asserted Vargas acted intentionally throughout the entire shooting spree. The prosecutor argued "what conclusion can you possibly come to, other than he is trying to shoot every single person in the car? . . . That's what attempted capital murder is." [96] The Vargas II jury charge did not mention or define "reckless." [97] The only lesser included offense addressed in the charge was attempted murder.[98] The verdict forms allowed the jury to find

---

86. Trial Tr., Vol. 4, at 67.

87. State Habeas R. at 1139.

88. *Id.* at 1140–41.

89. *Id.* at 1140–41.

90. *Id.* at 1150.

91. *Neal,* 141 F.3d at 210.

92. *See* TEX. PENAL CODE ANN. §§ 19.02 and 19.04 (Vernon 2003).

93. State Habeas R. at 1.

94. *De La Rosa,* 817 F.2d at 263.

95. Trial Tr., Vol. 2, at 237–38; Trial Tr., Vol. 3, at 7–8.

96. Trial Tr., Vol. 4, at 67.

97. State Habeas R. at 71–78.

98. *Id.* at 72–74.

Vargas guilty or not guilty of attempted capital murder or attempted murder.[99] The Vargas II jury, after completing its deliberations, found Vargas acted intentionally and found him guilty of attempted capital murder, as alleged in the indictment.[100]

Here, as in *Green, De La Rosa,* and *Garcia,* the State failed to introduce sufficient evidence on which a reasonable jury could find Vargas's state of mind changed between the time, according to the jury in Vargas I, he "recklessly" shot Serna and the time, according to the jury in Vargas II, he "intentionally" shot at Lopez, Jimenez, and Contreras. The Court accordingly concludes the Texas Court of Criminal Appeals unreasonably applied the collateral estoppel doctrine, as developed by the Supreme Court in *Ashe* and its progeny, in denying Vargas habeas corpus relief. Vargas is therefore entitled to habeas corpus relief from his attempted capital murder conviction.

## IV. *CONCLUSION AND ORDERS*

For the reasons set out above, the Court holds that the Texas Court of Criminal Appeals decision unreasonably applied clearly established Federal law, as determined by the Supreme Court of the United States, and Vargas is therefore entitled to habeas relief from his attempted capital murder conviction. Accordingly, the Court enters the following orders:

1. The Court **GRANTS** Petitioner Juan Carlos Vargas's "Petition for a Writ of Habeas Corpus by a Person in State Custody" pursuant to 28 U.S.C. § 2254 [Docket No. 1].

2. The Court **VACATES** and **SETS ASIDE** the conviction and sentence imposed by the 243rd District Court of El Paso County, Texas, in criminal cause number 980D08276. This Order does not effect any other conviction and sentence imposed by a court including, but not limited to, the conviction and sentence imposed by the 243rd District Court of El Paso County, Texas, in criminal cause number 970D06949. This Order also does not prohibit the State from reindicting Vargas.[101]

3. The Court **DENIES** all pending motions, if any, as **MOOT.**

**SO ORDERED.**

---

99. *Id.* at 79–86.

100. State Habeas R. at 68.

101. *United States v. Dixon,* 509 U.S. 688, 705, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) ("The collateral-estoppel effect attributed to the Double Jeopardy Clause ... may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts. But this does not establish that the Government "must ... bring its prosecutions ... together. It is entirely free to bring them separately, and can win convictions in both." ").